UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL DEAN DERRINGTON,                           Case No. 2:14-cv-01768-MC

               Petitioner,                           OPINION AND ORDER

      v.

MARK NOOTH, Superintendent,
Snake River Correctional Institution,

               Respondent.
_____

McShane, Judge:

     Petitioner brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254,

alleging ineffective assistance of counsel. For the reasons explained below, the petition is denied.

<u>BACKGROUND</u>

     In October 2008, petitioner and his wife, Nona, were camping with their horses on a

ranch in rural Douglas County owned by Mark McCroskey. At the time, Mark Spruill resided

nearby in a cabin on the property. They all shared a spring water source, with the spring water

funneled through a pipe and into a holding tank.

1   - OPINION AND ORDER

According his testimony at trial, Spruill saw petitioner's wife accessing the spring water directly from the tank rather than from the attached pipe or faucet. Believing that her actions could contaminate the water, Spruill asked her to use the faucet. Resp. Ex. 103, Transcript of Trial Proceedings (Tr.) at 98-99, 177-78. The following day, petitioner and his wife walked to Spruill's cabin and confronted him about the way he had talked to petitioner's wife. Tr. 99-100. Spruill walked over to the holding tank and saw evidence that petitioner again was dipping water jugs directly into the tank to collect water. Tr. 100-01. Spruill also noticed that the pipe feeding water to the tank was missing, meaning that the tank would run dry. Tr. 101. Spruill admitted that he was angry about the water situation, and he told petitioner to stay out of the spring. Tr. 102. Petitioner responded that Spruill had no authority to tell him how to use the spring. Spruill again told petitioner to stay out of the spring, and he picked up a muffler pipe "to let him know I was serious." Tr. 103, 300. Spruill went inside his cabin, and petitioner and his wife starting walking back to their camp. Tr. 105, 301.

Spruill testified that he wanted McCroskey to resolve the dispute and decided to call him from the nearest pay phone about two miles away. As he was driving from the cabin, he stopped and asked petitioner if he had McCroskey's phone number. Tr. 104, 108, 320. Spruill testified that petitioner pulled a loaded handgun from behind his back and ordered Spruill to the ground. Tr. 108-10. As Spruill lay with his face in the ground, petitioner's wife bound Spruill's hands and feet with twine. Tr. 110-11. Once Spruill was tied up, petitioner began kicking him and hitting his head. Tr. 112-113. Petitioner also fired a gunshot into the ground near Spruill's right ear. Tr. 113.

Petitioner testified to a somewhat different version of events. According to petitioner, after Spruill waved the pipe, he got into his car and raced toward petitioner and his wife, making

contact with petitioner's knee. Tr. 302, 306-07. Spruill then got out of his car and ran at petitioner waving his fists. Tr. 315-16. Petitioner testified that he "peppered" Spruill with punches and took him to the ground with by shoving Spruill's back with his foot. Tr. 315-16, 318. Petitioner called for his wife to bring some twine, and he tied Spruill's hands and feet together. Tr. 318-19. Petitioner admitted shooting a gun into the ground about 8 to 15 feet from Spruill's head to "make him calm down." Tr. 320.

Petitioner walked Spruill at gunpoint to petitioner's camp, tied him up again and said he was under "arrest." Tr. 115, 327, 330. Petitioner testified that he believed Oregon State law gave him the right to effectuate a citizen's arrest of Spruill. Tr. 115, 320, 327. Petitioner asked Spruill if he should call McCroskey or the police, and Spruill asked petitioner to contact McCroskey because he was closer. Tr. 116. Petitioner then sent his wife to the nearest neighbor's house to call McCroskey.

A visitor, Joseph Schneiderhan, subsequently stopped by the camp. Schneiderhan testified that when he arrived, petitioner's wife had left to make a phone call and was not at the camp. Tr. 276. When petitioner's wife returned, she explained that McCroskey "would be late" and could not come to the property right away. Tr. 118, 325. Spruill testified that he then asked that petitioner call police and offered to drive him to a telephone. Tr. 118, 125. In contrast, petitioner testified that he asked Schneiderhan to call the police but told him to "forget calling" after Spruill asked petitioner to wait for McCroskey. Tr. 280, 326, 332. Petitioner further testified that he expected law enforcement to show up at any time, because McCroskey had been told about the situation. Tr. 288, 329.

Petitioner told Spruill he was still under arrest and would be held until the police arrived. Tr. 119. Spruill testified that petitioner watched him at gunpoint throughout the night and at one

point shoved the gun inside Spruill's mouth and stated, "Aren't you sorry you're messing with me now?" Tr. 120. Petitioner denied this allegation. Toward morning, petitioner told Spruill, "All I have to do is break your neck and throw you over a cliff nearby and all my troubles will be over." Tr. 122, 182. Petitioner admitted making this statement. Tr. 351.

At daylight, petitioner left camp to call police and petitioner's wife, who was armed, watched over Spruill. Tr. 123. Petitioner reached a sheriff's deputy on the telephone and reported that he was detaining Spruill in a citizen's arrest for assault and attempted murder. Tr. 339-40. The deputy cautioned petitioner that he could be arrested for kidnapping Spruill. Tr. 340-41.

Spruill testified that petitioner returned to camp and said he would drop all charges if Spruill told the police he tried to hit petitioner with his car. Tr. 124. Spruill also testified that petitioner's wife moved Spruill's car to corroborate their story. Tr. 124-25. Petitioner admitted that he and his wife moved Spruill's car to get it out of the road. Tr. 344.

When law enforcement officers arrived, petitioner asked them to take Spruill into custody for assault, threatening conduct, and denying him access to the water tank. Tr. 348. After talking to Spruill and petitioner, the officers instead arrested petitioner and his wife. Tr. 350.

Petitioner was charged with two counts of Kidnapping in the First Degree, Assault in the Third Degree, Assault in the Fourth Degree, and Unauthorized Use of a Motor Vehicle. Resp. Ex. 102. Petitioner pled not guilty to the charges and proceeded to trial.

At trial, the State relied on the testimony of Spruill and the arresting officers and a forensic report indicating that Spruill's DNA was found on the gun seized from petitioner and his wife. Resp. Ex. 113, Tr. 199. Petitioner asserted that his apprehension of Spruill was a lawful citizen's arrest. Tr. 424-25, 443-44. Petitioner testified in his own defense, while his wife asserted her right against self-incrimination and did not testify. Tr. 269, 282-386.

The jury convicted petitioner of all five counts, and the trial court sentenced petitioner to a 92-month term of imprisonment. Tr. 452-53; Resp. Ex. 101.

Petitioner's attempt to appeal his conviction was dismissed as untimely. Resp. Ex. 105, 106. Petitioner then filed a petition for post-conviction relief (PCR), and the PCR court denied his claims. Resp. Ex. 108, 134. The Oregon Court of Appeals affirmed the PCR court's ruling without opinion, and the Oregon Supreme Court denied review. Resp. Ex. 140-42.

On November 6, 2014, petitioner filed the instant petition seeking habeas relief under 28 U.S.C. § 2254. Petitioner has withdrawn portions of the claims asserted in his petition and seeks relief based on counsel's failure to call two witnesses at trial. Pet.'s Brief at 2.

<u>DISCUSSION</u>

Petitioner alleges ineffective assistance of counsel based on trial counsel's failure to call Mark McCroskey and Duane Parnell as defense witnesses at trial. *See Strickland v. Washington*, 466 U.S. 668 (1984). The PCR court denied these claims, and respondent maintains that the PCR court's decision is entitled to deference under 28 U.S.C. § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (on habeas review of ineffective assistance claims, a state court decision "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself").

A federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it applies incorrect Supreme Court authority or reaches a contrary result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529

U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly

established federal law if the state court identifies the correct legal principle but applies it in an

"objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per

curiam); *Williams,* 529 U.S. at 407-08, 413. "Even if the federal habeas court concludes that the

state court decision applied clearly established federal law incorrectly, relief is appropriate only

if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001);

*see also Early v. Packer*, 537 U.S. 3, 11 (2002) (state court decisions that are not "contrary to"

Supreme Court precedent may be set aside only "if they are not merely erroneous, but 'an

*unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable*

determination of the facts'").

      Under the well-established Supreme Court precedent of *Strickland*, a prisoner alleging

ineffective assistance of counsel must show that 1) "counsel's performance was deficient," and

2) counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

"Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from

a breakdown in the adversary process that renders the result unreliable." *Id.* Judicial review of an

attorney's performance under *Strickland* is "highly deferential" and carries a "strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at

689. In particular, "strategic choices made after thorough investigation of law and facts relevant

to plausible options are virtually unchallengeable." *Id.* at 690. Accordingly, if trial counsel

interviewed a witness and decided against calling the witness to testify, a presumption generally

exists that counsel was constitutionally effective. *Strickland*, 466 U.S. at 689-90 (presumption in

favor of effective assistance); *Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few

decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial.").

In the PCR proceeding, petitioner presented the declaration of McCroskey. He indicated that if called at trial he would have testified that petitioner had permission to use the spring water and Spruill had no authorization to tell anyone how to access the water. Resp. Ex. 120. McCroskey also stated that he believed Spruill "was nuts" and "had some kind of Bi-Polar disease." Resp. 120. Petitioner also presented the declaration of Parnell, a defense investigator for petitioner's wife who interviewed Spruill about the incident. Parnell would have testified that Spruill told him petitioner had instructed his wife to call the police. Resp. Ex. 123. The PCR court found that McCroskey's declaration included no relevant evidence and that Parnell's proffered testimony also was irrelevant because the evidence showed that either petitioner called the police or his wife did at petitioner's instruction. Resp. Ex. 134 at 1. The PCR court concluded that petitioner presented "insufficient evidence of any inadequacy or any prejudice on any claim." Resp. Ex. 134 at 2.

Petitioner maintains that the PCR court unreasonably applied *Strickland* in denying his claims, and that the testimony of McCroskey and Parnell was essential to his defense of a lawful citizen's arrest. Petitioner contends that McCroskey would have corroborated his testimony about Spruill's aggressiveness and his explanation that Spruill had no right to regulate the water tank. Petitioner further argues that Parnell's testimony would have established that Spruill admitted petitioner promptly asked his wife to contact law enforcement. Petitioner asserts that counsel's reasons for not calling these witnesses were based on mistaken assumptions rather than legal strategy. I disagree.

According to the PCR record, trial counsel interviewed McCroskey and determined "on balance, it would not be beneficial to call him as a witness." Resp. 129 at 2. Specifically, McCroskey did not recall conversations as petitioner had reported and had not given petitioner permission to use the property to the degree petitioner had represented. Resp. Ex. 129 at 2. Further, counsel explained that Spruill's lack of authority over the water would not have excused petitioner's alleged actions, and previous conversations between McCroskey and petitioner would have had no relevance to petitioner's citizen's arrest defense. Resp. 129. Likewise, counsel decided against calling Parnell as a witness because Parnell would have been required to disclose his investigative reports and could have brought in "very damaging evidence." Resp. Ex. 129 at 2.

Significantly, counsel did not fail to interview these witnesses or to consider their testimony; instead, counsel determined that their testimony would not benefit petitioner's case. Given this record, counsel exercised professional judgment in deciding not to call McCroskey and Parnell, and the PCR court was not unreasonable in finding no deficient performance. *See Ayala v. Chappell*, 829 F.3d 1081, 1104-06 (9th Cir. 2016) (finding no ineffective assistance where counsel decided against calling gang-affiliated witnesses, consistent with a "no-gang" defense strategy); *Davis v. Woodford*, 384 F.3d 628, 650 (9th Cir. 2004) (finding no ineffective assistance for failing to call mitigation witnesses where testimony would have been negative or cumulative).

Furthermore, the record does not establish prejudice arising from the alleged failure to call McCroskey or Parnell, particularly in light of the evidence against petitioner. *Strickland*, 466 U.S. at 695 (to establish prejudice, petitioner must show a reasonable probability that, in the absence of counsel's failure, the fact-finder would have had a reasonable doubt as to guilt).

Petitioner admitted that he tied up Spruill, hit him numerous times, fired a gun within 10 feet of

his head, and prevented him from leaving petitioner's camp. Petitioner also admitted that he did

not call the police until the day after the incident because he assumed McCroskey would inform

police of the incident. In light of this evidence, McCroskey's opinion of Spruill or Spruill's lack

of authority to dictate use of the spring water would have had no bearing on the lawfulness of

petitioner's actions. Similarly, Parnell's testimony would have been cumulative of testimony

from a neighbor and Schneiderhan that petitioner asked his wife to call for assistance shortly

after the incident. Tr. 240-42, 276, 280. Parnell's testimony would not have added much, if

anything, to petitioner's defense. Accordingly, the PCR court reasonably found no prejudice

arising from counsel's failure to call McCroskey or Parnell.

    In sum, petitioner fails to establish that the PCR court's decision was contrary to or an

unreasonable application of clearly established federal law, and petitioner's claim of ineffective

assistance of trial counsel is denied.

<u>CONCLUSION</u>

    Petitioner's Petition for Writ of Habeas Corpus (#2) is DENIED and this case is

DISMISSED. A Certificate of Appealability is denied on the basis that petitioner has not made a

substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

    DATED this _15th_ day of February, 2017.


                                               Michael McShane
                                               United States District Judge